IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THOMAS COATES                                  :
              *Plaintiff*,
                                                              CIVIL ACTION
       v.                                      :              NO. 19- 5143

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY         :
              *Defendant*.

**<u>MEMORANDUM</u>**

**Jones, II   J.**                                          **October 4, 2022**

       **I.        Introduction**

       The within matter involves an insurance policy and its applicability to property damage

sustained by Plaintiff —namely, the collapse of a retaining wall.  Defendant has filed a Motion

for Summary Judgment on the basis that Plaintiff's loss is excluded from coverage under the

policy.  For the reasons set forth herein, Defendant's Motion shall be granted.

       **II.       Background**

       The undisputed facts are as follows:

       Defendant issued Homeowners Insurance Policy number 7545451510, effective March 1,

2018 to March 1, 2019 ("Policy"), to Plaintiff, with respect to the property located at 2185

Palomino Drive, Warrington, Pennsylvania ("Insured Premises").  (SUF ¶ 1.)  The Policy

features dwelling limits of $421,320, private structures limits of $84,264, and personal property

limits of $294,924, with a $1,000 deductible. (SUF ¶ 1.)  The Policy defines covered causes of

property loss as follows:[1]

### CAUSES OF PROPERTY LOSS
### SECTION I – LOSSES WE COVER
### (SPECIAL PERILS)

\* \* \*

### COVERAGE A – DWELLING AND COVERAGE B – PRIVATE STRUCTURES

We will pay for sudden and accidental direct physical loss or damage to the property described in Coverages A and B, except as excluded in **SECTION I – LOSSES WE DO NOT COVER.**

(SUF ¶ 2.)

Coverage is subsequently excluded by the perils listed in Section I:

### SECTION I – LOSSES WE DO NOT COVER

1.  We do not insure under any Section I coverage for any loss which would not have happened in the absence of one or more of the following excluded events. We do not insure for any such loss regardless of:

  (a)  the cause of the excluded event; or
  (b)  other causes of the loss; or
  (c)  whether such causes acted at the same time or in any other sequence with the excluded event ***to produce or contribute to the loss***.

These exclusions apply whether or not the excluded event results in widespread damage or affects a substantial area. The excluded events are listed below.

\* \* \*

  D.  **Water Damage**, meaning any loss caused by, resulting from, contributed to or aggravated by:

\* \* \*

---

[1] Unless otherwise noted, the bold emphasis contained within the Policy language appears in the original Policy.

3.  water or water-borne material below the surface of the ground, including water which exerts pressure on, or flows, seeps or leaks through any part of a building, sidewalk, foundation, driveway, swimming pool or other structure or water which causes earth movement.

This exclusion applies whether or not the water damage is caused by or results from human or animal forces or any act of nature.

\* \* \*

E.  **Earth Movement**, meaning any loss caused by, resulting from, contributed to or aggravated by events that include, but are not limited to:

\* \* \*

3.  sinkhole;
4.  subsidence;
5.  mudslide including landslide, mudflow, debris flow, avalanche or sediment;
6.  erosion or excavation collapse;
7.  the sinking, rising, shifting, expanding, bulging, cracking, settling or contracting of the earth, soil or land; and

\* \* \*

This exclusion applies whether or not the earth movement is combined with water or caused by or results from human or animal forces or any act of nature.

\* \* \*

H.  **Neglect by you** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered by a peril insured against.

\* \* \*

K.   **Collapse**, except as granted under SECTION I – ADDITIONAL COVERAGES for Collapse.

\* \* \*

(SUF ¶ 3) (italicized emphasis added).

3

In Section I(2), the Policy provides that if any of the listed exclusions contribute to the loss, either directly or indirectly, or occur before, at the same time, or after the loss or any other cause of the loss, there is no coverage for the loss:

## SECTION I – LOSSES WE DO NOT COVER [continued]

\* \* \*

2.  We do not insure under any coverage for any loss consisting of one or more of the items below … Further, we do not insure for loss described in Exclusion 1. above and Exclusion 3. below regardless of whether one or more of the items below (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss. The items are:

    A.  conduct, act, failure to act, or decision of any person . . . whether intentional, wrongful, negligent or without fault.

    B.  defective, inadequate, faulty or unsound:

        1.  planning, zoning, development, surveying, siting;
        2.  design, specifications, workmanship, repair, construction,  renovation, remodeling, grading, compaction;
        3.  materials  used  in  repair,  construction, renovation or remodeling; or
        4.  maintenance;

        of any property whether on or off the residence premises. Property includes land, structures or improvements of any kind.

    C.  weather conditions.

        However, this exclusion only applies if weather conditions contribute in any way with an excluded event or cause of loss to produce the loss.

(SUF ¶ 4.)

In Section I(3), the Policy also excludes coverage for loss or damage that results directly or indirectly from wear and tear, aging, deterioration, and pressure or weight of water:

    3.  We do not cover loss or damage to the property described in <u>Coverage A</u> and <u>Coverage B</u> which results directly or indirectly from any of the following:

        A.  wear and tear, marring,  scratching,  aging, deterioration,  corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in

property that causes it to damage or destroy itself;

    B.  **fungus and mold**.  There is no coverage for loss which, in whole or part, arises out of, is aggravated by, contributed to by acts or omissions of persons, or results from fungus and mold . . .

    C.  settling, cracking, shrinking, bulging, or expansion of bulkheads, pavements, patios, foundations,  footings, supports, walls, floors, roofs, or ceilings;

* * *

    H.  freezing, thawing or pressure or weight of water, snow or ice, . . . to a . . . retaining wall . . . .

(SUF ¶ 5.)

The Policy further contains exceptions to the exclusion for loss caused by collapse:

### SECTION I – ADDITIONAL COVERAGES

* * *

  16.  **Collapse**.  **We** will pay for sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused only by one or more of the following:

* * *

    B.  hidden decay of the structure;
    C.  hidden insect or hidden vermin damage;
    D.  weight of contents, equipment, animals or people;

* * *

    F.  use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to a[] . . . patio . . . [or] retaining wall . . . is not included under items B., C., D., . . . and F. unless the loss is a direct result of the collapse of a building.

* * *

5

(SUF ¶ 6.)

On March 27, 2019, Plaintiff reported a February 24, 2019 loss to MetLife regarding a collapsed retaining wall, and MetLife issued Plaintiff a claim acknowledgement letter dated March 28, 2019, assigning a claim number of JDI22586 EA ("Claim").  (SUF ¶ 7.)  On June 3, 2019, Joseph Graci, P.E. of Franklin Engineering, Inc. conducted an inspection of the Insured Premises to evaluate the structural condition of the retaining wall, the wood that was used to build the wall, and to determine the cause of the collapse of the retaining wall.  (SUF ¶ 8.) Plaintiff reported that he hit a retaining wall with a machine, which caused the retaining wall to collapse. (SUF ¶ 9.)  The retaining wall is located to the rear of the house and spans from left to right.  (SUF ¶ 10.)   The retaining wall is located near a steep grade change at the rear of the yard of the subject lot, measuring approximately 12' to 14' high and approximately 70' to 75' long. (SUF ¶ 11.)  According to Plaintiff, a portion of the wall collapsed immediately after impact, and the remaining portion collapsed slowly during an extended period after the initial impact. (SUF ¶ 12.)  In his report, Mr. Graci opines in pertinent part:

> **B.**  It is also our professional opinion to within the same above standard, that the root cause of the collapse of the subject wood retaining wall was its age; wear and tear; exposure to the elements; a lack of a proper drainage system; the very weak, decayed, water damaged condition of the wood members of the wall; the lack of proper maintenance (making proper repairs of/to the wall) during its lifetime; adding structural bracing where and when required, i.e. as the wall got weaker and weaker, when the shed and crushed stone were installed, etc. The wood members of the wall that were observed did not have the structural strength to properly support the intended soil and other loads.
>
> * * *
>
> **E.**  It is my professional opinion to a reasonable degree of engineering certainty, that the root cause the wall or any portion of the wall collapsing was the severely deteriorated and decayed condition of the wall, not the machine coming in contact with the wall. The machine may have been a contributing factor if it indeed hit the wall but could not be the root cause of the total or substantial collapse of the wall.

6

> Had the wall not been in such a decayed and weakened condition, a tap from the machine (which was reported at the assessment meeting) would not have caused a substantial portion of the wall to collapse. The wall collapse was due to years of exposure, wood rot and moisture damage; age; wear and tear; lack of proper maintenance; and the other types of damage and problems as indicated elsewhere with this report and Appendix attachment.

(SUF ¶ 13.)

Mr. Graci's report also contains photographs depicting the condition of the retaining wall wood members as they existed at the time of his inspection. (SUF ¶ 14.)  Mr. Graci opines that at least one photograph demonstrates "the signs of earth subsidence."  (SUF ¶ 15.)  According to Mr. Graci, "a lot of water" entered the soil directly behind the retaining wall, increasing the load that the soil placed on the wall.  (SUF ¶ 16.)

On June 28, 2019, based upon the conclusions of the report issued by Joseph Graci, representations by Plaintiff, and MetLife's comprehensive investigation, MetLife formally denied Plaintiff's Claim. (SUF ¶ 17.)  Plaintiff filed suit, alleging a single cause of action for breach of contract against MetLife. (SUF ¶ 18.)  Specifically, Plaintiff alleges that on or about February 24, 2019, the Insured Premises "suffered direct physical loss and damage . . . believed to be the result of a peril insured against under the Policy, resulting in damage to the insured premises." (SUF ¶ 18.)  On January 24, 2020, MetLife filed a Motion for Judgment on the Pleadings or, Alternatively, Summary Judgment.  (SUF ¶ 19.)  On June 11, 2020, this Court denied, without prejudice, MetLife's Motion for Judgment on the Pleadings or, Alternatively, Summary Judgment.  (SUF ¶ 20.)  Specifically, this Court noted that Plaintiff contended he could not adequately present essential facts to oppose Summary Judgment because expert discovery had not yet occurred. (SUF ¶ 20.)  Thus, the Motion was denied without prejudice to refile after the completion of expert discovery.  (SUF ¶ 20.)

Also during this time, Mr. Graci issued a Supplemental Report dated August 17, 2020, to address an issue Plaintiff had with Graci's use of the word "machine" instead of "vehicle" in his Report.  (SUF ¶ 21.)  Mr. Graci found no modifications to his initial report was warranted and included a copy of the sales receipt issued to Plaintiff when he purchased the machinery at issue herein, to show it was not a "vehicle" but instead, was in fact a "machine."  (SUF ¶¶ 21-22.)  Mr. Graci further explained that one of two things would have occurred had Plaintiff been driving perpendicular to the retaining wall when he struck it with the machine:

> 1. If the machine was moving at a speed that was fast enough to cause a substantial portion of the wall to collapse, then the PH [Policy Holder] would not have been able to stop the machine before it went over the embankment and down the hill with the wall.
>
> 2. If the machine was going so slowly that the PH [Policy Holder] had time to stop it after the machine hit the wall but before the machine went down the hill, (which was the case since the PH [Policy Holder] did not report going down the hill with the machine), then the impact would not have been significant enough to cause the entire portion or even a significant portion of the wall to collapse, i.e. only localized minor damage might have occurred.

(SUF ¶ 23.)

It remained Mr. Graci's "professional opinion to a reasonable degree of engineering certainty, that the root cause the wall or any portion of the wall collapsing was the severely deteriorated and decayed condition of the wall, not the machine coming in contact with the wall." (SUF ¶ 24.)  According to Mr. Graci, the wall collapse was due to years of exposure, wood rot and moisture damage, aging, wear and tear, lack of proper maintenance, as well as other types of damage and problems as indicated in his June 12, 2019 Report. (SUF ¶ 25.)

On or about August 17, 2020, Plaintiff provided Defendant with a letter from Jeff Olen ("Mr. Olen"), who conducted a single inspection of the Insured Premises on July 1, 2020, approximately one year and four months after the February 24, 2019 date of loss. (SUF ¶ 26.)

On January 27, 2021, MetLife conducted a deposition of Mr. Olen.  (SUF ¶ 27.)  Subsequent to

doing so, Defendant filed the instant Motion, as well as a Motion in Limine to Preclude Report

and Testimony of Plaintiff's Expert, Jeff Olen.  (ECF No. 22.)  The Motion in Limine was

ultimately referred to United States Magistrate Judge Lynne A. Sitarski for disposition.  (ECF

No. 34.)  On August 30, 2022, Judge Sitarski issued an extensive Opinion granting Defendant's

Motion on the bases that: Mr. Olen's causation opinion did not satisfy the reliability requirement

for expert opinions and would not "'help the trier of fact to understand the evidence or to

determine the fact in issue'"; and, Mr. Olen's personal interpretation of the Policy's coverage

provisions and exclusions was not permissible, as the same constitutes a "question of law for the

courts to decide."  (ECF No. 38 at 21-22) (citations omitted).[2]

### III.   Standard of Review

Under Federal Rule of Civil Procedure 56(a), a court shall grant summary judgment "if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the

moving party is entitled to a summary judgment as a matter of law." *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).  "If the moving party meets its burden, the

burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific

facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d

Cir. 2015) (internal citations and quotation marks omitted).  Therefore, in order to defeat a

---

[2]  In his Response to the instant Motion, Plaintiff's denials of Defendant's Undisputed facts are
either not supported by evidence of record or are premised on Mr. Olsen's Report and deposition
testimony.  Because facts not supported by evidence of record are deemed admitted and because
Judge Sitarski has precluded Mr. Olsen's Report and testimony from evidence, all denials
contained within Plaintiff's Response to Defendant's Statement of Undisputed Facts shall be
deemed admitted.

motion for summary judgment, the non-movant must establish that the disputes are both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law; and (2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).  "[A] nonmoving party must adduce more than a mere scintilla of evidence in its favor and cannot simply reassert factually unsupported allegations contained in its pleadings[.]" *Williams v. West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (citation omitted).  Accordingly, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

A court must "view the facts and any reasonable inferences drawn therefrom in the light most favorable to the party opposing summary judgment." *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 160 (3d Cir. 2003). However, if a party fails to properly address another party's assertion of fact, a court may consider the fact undisputed and grant summary judgment. *See* Fed. R. Civ. P. 56(e)(2)-(3); *see also Judge C. Darnell Jones II Chambers Policies and Procedures* (rev'd Feb. 23, 2022), http://www.paed.uscourts.gov/documents/procedures/jonpol.pdf  ("The Court will not consider any description of a fact that is not supported by citation to the record. Statements of Material Facts in support of or in opposition to a motion for summary judgment

must include specific and not general references to the parts of the record that support each of the statements, such as the title of or numbered reference to a document, the name of a deponent and the page(s) of the deponent's deposition, or the identity of an affidavit or declaration and the specific paragraph relied upon. Pinpoint citations are required.").

## IV.    Discussion

"Whether a particular loss is within the coverage of an insurance policy is a question of law which may be decided on a motion for summary judgment in a declaratory judgment action." *Allstate Ins. Co. v. Levell*, Civ. No. 07-3790, 2008 U.S. Dist. LEXIS 101648, at *7 (E.D. Pa. Oct. 31, 2008) (quoting *Lebanon Coach Co. v. Carolina Cas. Ins. Co*., 675 A.2d 279, 283 (Pa. Super. Ct. 1996)). Specifically,

> A district court sitting in diversity must apply the substantive law of the forum state, here, Pennsylvania. In Pennsylvania, the court, not a jury, generally performs the function of interpreting an insurance contract. The initial burden lies with the insured to establish coverage under an insurance policy. When an insurer relies on a policy exclusion to deny coverage, however, it bears the burden of showing the exclusion applies. The court's task is to unearth the intention of the parties as evidenced by the words used in the insurance policy.  The policy must be read as a whole and its meaning must be construed according to its plain language. Words of common usage are to be construed in their natural, plain, and ordinary sense, and a court is free to consult a dictionary to inform its understanding of terms. However, should the policy define certain terms, the court will apply those definitions in construing the policy. Courts must not assume that contractual language was chosen carelessly. When the language of an insurance policy is clear and unambiguous, a court must enforce that language.

*Id.* at *9-11 (citations omitted).

In this particular case, Plaintiff raises one cause of action: Breach of Contract.  In Pennsylvania, a breach of contract claim may be sustained if a plaintiff shows the following: "the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Axis Specialty Ins. Co. v. Brickman Group Ltd., LLC*, 458

F. App'x 220, 224 (3d Cir. 2012) (internal quotation marks omitted) (citations omitted). Neither party herein disputes the existence of a valid and binding contract in the form of Pennsylvania Homeowners Insurance Policy No. 7545451510.  With respect to the Policy's "essential terms," Plaintiff contests Defendant's interpretation of "sudden and accidental direct physical loss" as it pertains to the incident giving rise to Plaintiff's claim.  (ECF No. 23 at 20.)[3]  Plaintiff further contends applicable Policy provisions are ambiguous.  (ECF No. 23 at 21.)  However, Plaintiff has adduced no evidence of record to establish same.[4]

In making these arguments, Plaintiff fails to properly recognize the clear and unambiguous exclusions contained within the Policy.  Although the Policy does provide additional coverage for "collapse," the Policy defines "collapse" as "***an abrupt falling down or caving in of a building or any part of a building***.  Collapse does not include settling, cracking, sagging, bowing, bending, leaning, shrinking, bulging or expansion.  A building or any part of a building that is danger of falling down or caving in is not considered to be in a state of collapse." (ECF No. 21-5 at 17) (emphasis added).  As Defendant submits and the Policy clearly provides,

> [C]overage may be precluded if a determination is made that "[the] loss . . .
> would not have happened in the absence of ***one or more of the*** following
> ***excluded events*** . . . [and] [w]e do not insure for any such loss regardless of: (a)

---

[3]  Plaintiff's Response to Defendant's Statement of Undisputed Facts and Plaintiff's Brief in Opposition to the instant Motion, both fail to comply with this Court's directives regarding responses to Motions for Summary Judgment.  For example, Plaintiff generally cites to Defendant's Exhibit A in support of his "facts."  Exhibit A is 48 pages in length, including numerous subsections.  As such, Plaintiff's submissions are of no assistance to the court and defeat the purposes of Fed.R.Civ.P. 56(c)(1)(A) (requiring in pertinent part that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: . . . citing to ***particular parts*** of materials in the record") (emphasis added), as well as this Court's *Policies and Procedures* (rev'd Feb. 23, 2022), http://www.paed.uscourts.gov/documents/procedures/jonpol.pdf.

[4]  As previously discussed, Plaintiff produced the Report and deposition testimony of Mr. Jeff Olen as his "expert."  However, on August 30, 2022, Judge Sitarski granted Defendant's Motion in Limine to Preclude Report and Testimony of Plaintiff's Expert, Jeff Olen. (ECF No. 38.) Inasmuch as Plaintiff has proffered no further evidence of record to dispute Defendant's expert opinion on these issues, the facts as presented in Section II hereinabove are deemed undisputed.

the cause of the excluded event; or (b) **other causes of the loss**; or (c) **whether such causes acted at the same time or in any other sequence with the excluded event to produce or contribute to the loss**."

(SUF ¶ 3) (emphasis added).

Plaintiff claims the retaining wall on his property suddenly and accidentally collapsed when it was struck by his Multi Terrain Loader.  (ECF No. 23 at 16.)  Again, Plaintiff provides no evidence of this.  Conversely, Defendant provides evidence of record that it was not solely the contact made by the Loader that caused the wall to collapse but instead,

> [T]he root cause of the [wall's] collapse . . . was its age, wear and tear; exposure to the elements; a lack of a proper drainage system; the very weak, decayed, water damaged condition of the wood members of the wall; [and] the lack of proper maintenance (making proper repairs of/to the wall maintenance (making proper repairs of/to the wall) during its lifetime[.]

(ECF No. 21-6 at 4.)

Defendant's expert further opined "The wood members of the wall that were observed did not have the structural strength to properly support the intended soil and other loads."  (ECF No. 21-6 at 4.)  Photos of the wall remnants clearly show the severe extent to which the wood had become rotted, as well as how the area did not have proper drainage.  (ECF No. 21-6 at 9-28.)  Because these factors heavily contributed to the wall ultimately coming down, the loss of said wall cannot be said to have been "abrupt" or "sudden and accidental."  In fact, Mr. Graci specifically noted "It was also reported that a portion of the wall collapsed immediately after impact **and that the remaining portion collapsed slowly during an extended period of time after the initial reported impact**."  (ECF No. 21-6 at 5) (emphasis added).[5]

---

[5] As the Third Circuit has reiterated,

> Pennsylvania courts deem the term "sudden and accidental" unambiguous, *see Techalloy Co., Inc. v. Reliance Ins. Co*, 338 Pa. Super. 1, 487 A.2d 820, 826-27 (Pa. Super. 1984), and define it to mean, respectively, "abrupt[]" and "unexpected or unintended." *Lower Paxon Twp. v. United States Fid. & Guar. Co*., 557 A.2d 393, 402 (Pa. Super. 1989); *see*

This Court recognizes that the Policy does cover (in pertinent part) "sudden and accidental direct physical loss to covered property involving the entire collapse of a building or any part of a building caused only by one or more of the following: hidden decay of the structure;  hidden insect or hidden vermin damage; [or] weight of contents, equipment, animals or people[.]"  (ECF No. 21-5 at 17.)  However, the Policy clearly excludes coverage for earth movement, neglect by owner, and collapse caused  "directly or indirectly from any of the following: wear  and  tear, aging, deterioration . . .or any quality in property that causes it to damage or destroy itself; fungus and mold; settling, cracking, shrinking, bulging, or expansion of . . . walls . . . ; freezing, thawing or pressure or weight of water, snow or ice . . . to a . . . retaining wall[.]" (SUF ¶¶ 3, 5.)

Again, as the photos taken by Defendant's expert clearly depict, the railroad ties used to construct the retaining wall had become visibly "damaged by age, exposure, wear and tear, [and] a lack of proper maintenance[.]  (ECF No. 21-6 at 12.)  Further, "[a] large number of the members were so rotted [and] water damaged . . . that they had lost a significant portion of their structural capacity to properly support the soil loads."  (ECF No. 21-6 at 12.)   Nevertheless, Plaintiff provides this Court with no evidence to rebut these conclusions.

As such, this Court finds Defendant did not breach its duty by denying coverage under the Policy.  *See Allegheny Design Mgmt. v. Travelers Indem. Co. of Am.,* 572 F. App'x 98, 100

---

*N. Ins. Co. of New York v. Aardvark Assocs., Inc.*, 942 F.2d 189, 193 (3d Cir. 1991) (following the Pennsylvania Superior Court's interpretation of "sudden and accidental," and holding that a "sudden and accidental" discharge of pollution must be "abrupt and last a short time"). Damage that is ongoing typically cannot be sudden. *See Lower Paxon*, 557 A.2d at 403 (gas that entered a home "gradually over time" was not "sudden"); *Techalloy*, 487 A.2d at 827 (pollution discharge over a long period of time, even if "sporadic," was not "sudden).
*Wehrenberg v. Metro. Prop. & Cas. Ins. Co*., 715 F. App'x 209, 212 (3d Cir. 2017).

(3d Cir. 2014) ("Under Pennsylvania law, a contract is interpreted according to its plain language, and where a plaintiff's claim is foreclosed by the plain language of the contract, summary judgment is appropriate.").

Accordingly, Plaintiff cannot sustain his Breach of Contract claim.

## V.    Conclusion

For the reasons set forth hereinabove, Defendant's Motion for Summary Judgment shall be granted.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II